UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 1:19-mj-02974 AOR

UNITED STATES OF AMERICA

vs.

RUEL LEWIS and JHENELLE LEWIS,

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes   __X__ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
ROBERT J. EMERY
Court ID No. A5501892
99 N.E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9421
FAX (305) 530-7976
Robert.Emery2@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Ruel Ellis, and<br>Jhenelle Lewis,<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 1:19-mj-02974 AOR |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 15, 2019__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 952(a) | Importation of a Controlled Substance. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Osten Barry, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __06/15/2019__

_____
*Judge's signature*

City and state: __Miami, FL__    Alicia M. Otazo-Reyes, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

Your Affiant Osten Barry, first being duly sworn, state the following as true and accurate to the best of my knowledge and belief:

1. I have been a Special Agent with HSI since March of 2013. I am currently assigned to ICE/HSI at Port Miami and have served in this position since March of 2018. As a Special Agent with HSI, I am responsible for investigating narcotics entering the United States, and investigating violation of statues relating to Immigration and Customs Enforcement, including Title 21 of the United States Code.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19 and 21 of the United States Code. I have participated in investigations involving violations of the Controlled Substances Act, which include conducting physical and electronic surveillance, execution of search warrants, and arrests of numerous drug traffickers. I have conducted interviews of numerous informants and suspects and have spoken with experienced narcotics investigators concerning the methods and practices of drug traffickers.

3. I have received specialized training in conducting narcotics investigations, including studying the techniques used by smugglers to bring narcotics into the United States. As a law enforcement officer, I have become familiar with the investigation and enforcement of state and federal narcotics laws. Based upon this experience, I have become well versed in the methodology utilized in narcotics trafficking operations, the specific language used by narcotics trafficking operations, and the unique trafficking patterns employed by narcotics organizations. I

1

am also familiar with the various methods generally utilized by traffickers to transport narcotics into the United States from other countries. I have conducted physical and electronic surveillance in many types of cases, including drug cases. I have arrested numerous individuals for various narcotic violations and have spoken with several narcotics dealers and confidential sources concerning the methods and practices of drug traffickers.

4. On June 15, 2019, Customs and Border Protection (CBP) Officers boarded the MSC Seaside (Seaside) cruise ship to conduct routine cabin searches at the Port of Miami upon the vessel's arrival in the United States. The vessel arrived from various ports to include San Juan, Puerto Rico; St. Thomas Island; St. Maarten Island; and Nassau, Bahamas (the last port before arriving in the Port of Miami). Prior analysis of passengers aboard the Seaside revealed two passengers, Ruel ELLIS and Jhenelle LEWIS, who made reservations for the cruise shortly prior to the scheduled departure of June 8, 2019.

5. CBP officers were escorted by a MSC security officer to cabin door 14204, which was occupied by ELLIS and LEWIS. CBP officers knocked on the door. When opened, CBP officers smelled marijuana emitting from inside the cabin. Upon entering the room, CBP officers encountered ELLIS and LEWIS. The officers identified themselves as CBP officers conducting routine customs exams. ELLIS and LEWIS told CBP officers that they had nothing to declare. ELLIS and LEWIS claimed ownership of the personal belongings in the cabin. CBP Canine (K9) officer Degraves entered the cabin to conduct a search utilizing his assigned Human and Narcotics Detection Dog (HNDD), which alerted to two identical black backpacks sitting on the floor. The CBP K9 officer and HNDD exited the cabin and additional CBP officers entered the cabin to conduct a full cabin search. Inspection of the backpack revealed what appeared to be after-factory stitching inside the lining of one of the backpack compartments. CBP cut near this

stitching, revealing a rectangular shaped package. Both ELLIS and LEWIS were handcuffed and escorted for secondary inspection in the security office.

6. Subsequent inspection of both backpacks revealed 5 total packages which contained approximately 9.5 kilograms of cocaine in total to be concealed inside of the backpacks. Law enforcement conducted a field test of the substance, which tested positive for the presence of cocaine. Homeland Security Investigations (HSI) Special Agent (SA) Berry and Miami-Dade Police Department (MDPD) Detective (Det.) Winders conducted an interview with LEWIS in the English language. SA Berry read LEWIS her Miranda rights in the English language from a preprinted form. LEWIS waived her rights and agreed to make statements regarding the incident. Post-Miranda, LEWIS provided the following summarized information. LEWIS was invited on the cruise by ELLIS as a way to make-up for problems they were having in their relationship. LEWIS brought various bags to carry her belongings and souvenirs in with her on the cruise and had been using them. The day the Seaside docked in St. Maarten, ELLIS instructed her to use a backpack that he had brought on the cruise himself. LEWIS complied and used a backpack offered by ELLIS. While out at the beach, LEWIS stated that she was separated from ELLIS and the backpacks when she decided to go shop for souvenirs. Upon meeting back up with ELLIS, LEWIS noticed that the backpack seemed heavier than it should be. LEWIS carried one of the backpacks back onto the ship. Once the two returned to the ship, LEWIS confronted ELLIS about the backpack and its contents. According to LEWIS, ELLIS stated that he had to take the backpacks or else something may happen to one of his family members. LEWIS stated that she didn't question him any further regarding the backpacks and what they contained. She admitted that she believed they may contain marijuana because both of them are of Jamaican decent and ELLIS still has family in Jamaica.

7. HSI SA Berry and MDPD Det. Winders conducted an interview with ELLIS in the English language. SA Berry read ELLIS his Miranda rights in the English language from a preprinted form. ELLIS waived his rights and agreed to make statements regarding the incident. Post-Miranda, ELLIS provided the following summarized information. ELLIS was asked by his female cousin who he referred to as "Tami" if he would like to go on a free cruise with someone of his choosing. ELLIS accepted. "Tami" then provided him with money to book the cruise. ELLIS invited LEWIS and booked the cruise. ELLIS was aware that "Tami" wanted him to bring backpacks back to the United States. Once in St. Maarten, ELLIS met with "Tami" and an unidentified male (FNU LNU) on the beach. According to ELLIS while on the beach, he noticed "Tami" and the unidentified male switch the backpacks that he and LEWIS brought with ones that "Tami" and FNU LNU were in possession of. ELLIS added that he did not believe that LEWIS was aware that the backpacks had been switched. ELLIS did think that the backpack felt a little heavier than it should. ELLIS stated that he knew that he was supposed to bring the backpacks, which he believed to contain some type of illegal substance, back to the United States but was not sure how his cousin was planning on obtaining them from him. He also added that he knew that she would meet him in St. Maarten and that he suspects that she is involved in illegal activity.

[remainder of the page intentionally left blank.]

8. Law enforcement arrested ELLIS and LEWIS for violations of Title 21 U.S.C. § 952(a), Importation of a Controlled Substance.

FURTHER AFFIANT SAYETH NAUGHT.

OSTEN BERRY, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed and sworn to before
me this the \_\_15th\_\_ day of June, 2019.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

5